### VANSICKLE v. WELLS, FARGO & CO.

#### (Circuit Court, D. Nevada. November 14, 1900.)

#### (No. 600.)

1. FRAUDULENT CONVEYANCES—CONSIDERATION—PARENT AND CHILD.
    An agreement by a father to pay his son wages after his majority, when made before the services are rendered, will support a conveyance of property in payment of such wages after they have been earned, as against other creditors of the father.
2. SAME—LEGALITY OF PREFERENCE.
    Unless prohibited by statute, a debtor may give a preference to a member of his family to whom he is justly indebted, by conveying property to

him, although he is insolvent, and suits by other creditors are pending against him, of which the grantee has knowledge.

In Equity.    Suit to enjoin the sale of property on execution.

W. E. F. Deal, for complainant.
M. A. Murphy, for defendant.

HAWLEY, District Judge (orally). This suit is of the same general character as Vansickle v. Wells, Fargo & Co. (C. C.) 105 Fed. 16, just decided. It depends upon the same general principles that were there elaborately discussed, and need not be repeated. By stipulation of the parties and consent of the court, all the testimony taken in that case which was material and relevant to this case is to be considered in evidence in this suit. From the testimony in this suit it appears that P. W. Vansickle made, executed, and delivered to his son James, the complainant herein, three deeds of certain real estate, situate in Douglas county, Nev.,—one on May 7, 1886, the second on October 17, 1893, and the other on October 24, 1893,—which are claimed by the defendant in this suit to have been made by the grantor and accepted by the grantee with intent on their part to hinder, delay, and defraud it, as a creditor of P. W. Vansickle. The testimony shows: That the son commenced to labor on the ranch of his father when he was 17 years of age. That after arriving at the age of 21, in 1883, there was a general conversation between himself and his father and mother, in the presence of the other members of the family, as to his future. The mother, especially, seemed anxious that he should remain at home; and all agreed that if he did some specified compensation should be agreed upon, to remunerate him for his services. As a result of this conversation the father then and there agreed to pay him wages better than he could get elsewhere. The language used by the father, as given by the witnesses, is not identical as to the amount, but all except the father testified that the sum was to be $500 per year. All agreed that he was to be paid wages. There is no controversy on this point, and no testimony was given in denial of or in conflict with the testimony that it was to be $500 per year. It is true, as claimed by defendant, that services rendered by children of the grantor after they become of age, who are members of his household, will not support a conveyance from him to them unless there was an agreement for compensation at the time the services were rendered. Such services are ordinarily presumed to have been gratuitously performed, and, in order to create a debt from the father to the son for such services, it may be admitted that it must affirmatively appear either that an express contract for remuneration existed, or that the circumstances under which the services were rendered were such as clearly exhibit a reasonable and probable expectation that there would be a reasonable and fair compensation. In this case it is satisfactorily shown that there was an express agreement between the father and son that compensation should be paid. The law is well settled that when a valuable consideration exists between the parties a fraudulent intent must be distinctly proved. It is only in cases of voluntary

conveyances, where there is no agreement between the parties, that the absence of a valuable consideration tends of itself to establish a fraudulent intent. The weight of the testimony in this suit clearly establishes the fact that the first deed was made, executed, and delivered for a valuable consideration, without any intent to hinder, delay, or defraud any of the other creditors of the father. This, to my mind, is too clear and plain to require comment or discussion.

The consideration for the other deeds arose out of transactions which occurred between the father and son as to the sale of cattle, and money loaned by the son to the father, the details of which it is deemed unnecessary to mention. After the suit of Wells, Fargo & Co. had been commenced against his father, the son requested payment of the amount due him. The father proposed to deed the son the property, saying it was the best he could do, and the son replied, "If it is the best you can do, I will take it." The testimony of the complainant with reference to the various agreements and business transactions between himself and his father which resulted in the execution of these deeds is corroborated not only by the testimony of other members of the family, but by all the surrounding circumstances which tend to shed any light upon the transactions. The only difference between this case and the one just decided lies in the fact that two of the deeds were executed and delivered to the son after the suit was brought against the father by Wells, Fargo & Co. But, under the authorities applicable to the particular facts of this case, that fact does not of itself establish any fraudulent intent on the part of the parties to hinder, delay, or defraud any creditors of the father. The right of the father to give a preference to members of his own family to whom he is justly indebted, over other creditors, is perhaps sufficiently shown in the opinion in the other case. But the principles announced in Bump, Fraud. Conv. (1st Ed.) 217, 220, are so directly in point, and so well supported by numerous authorities there cited, as to justify a quotation therefrom. The author, speaking of preferences not fraudulent, says:

"By virtue of his absolute dominion over his property, a debtor, however, may either give or allow a preference. It is no part of the policy of the statute to prohibit its application to the payment of one debt rather than another. The maxim, 'Vigilantibus non dormientibus leges subserviunt,' applies. Hence it is that a creditor who can secure a sufficiency, according to law, to satisfy his claim, is entitled to hold it against other creditors. This right, moreover, is not affected by the debtor's insolvency, or the preferred creditor's knowledge of such insolvency. The fact that a suit is pending, or that the transfer includes all the debtor's property, or that other creditors lose their debts by reason of the debtor's inability to meet all the demands against him, does not necessarily affect the validity of the preference. There is a distinction to be observed between the effect of a transfer by a debtor in failing circumstances, made to pay one or more of his debts, and that intent to hinder, delay, or defraud his other creditors against which the statute is aimed. The effect of the preference may be to delay or even to prevent them from obtaining payment at all, but, if the motive is to pay the preferred debt, the transaction is not invalidated. The statute is aimed only at intended fraud, but the payment of a debt to one creditor is no fraud upon other creditors,—no legal injury to them."

And again, in relation to an intent to defeat an execution, it is said:

"A preference may be given and received for the express purpose of defeating an execution, for the mere intent to defeat an execution does not of itself constitute fraud. The payment of a just debt is what the law admits to be rightful, and is not, therefore, fraudulent, either in law or in fact. The preferred creditor cannot be affected injuriously with notice of the debtor's intent to prefer, and thereby defeat an execution, because the purpose is honest, and such as the law sanctions. This is not delaying or hindering, within the meaning of the statute. It does not deprive other creditors of any legal right, for they have no right to a priority."

See, also, Sipe v. Earman, 26 Grat. 563, 569, where it was expressly held that the execution of a deed to one creditor pending a suit against the grantor by another creditor a short time before the term at which it was probable a judgment would be rendered against him did not render the deed fraudulent or void. Let a decree be entered in favor of the complainant, in accordance with the views herein expressed.